IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
DANVILLE DIVISION

| | |
|---|---|
| CAROLYN MIDKIFF, ) | |
| ) | Case No. 4:07CV00017 |
| Plaintiff, ) | |
| ) | |
| v. ) | **MEMORANDUM OPINION** |
| ) | |
| LOWE'S HOME CENTERS, INC., ) | |
| ) | By: Jackson L. Kiser |
| Defendant. ) | Senior United States District Judge |

Before me now is the Defendant's Motion for Summary Judgment or, in the alternative, to Stay Proceedings. For the reasons stated herein, the Defendant's Motion to Stay Proceedings will be **GRANTED**.

**I.    FACTUAL BACKGROUND**

In 2003, the Plaintiff, Carolyn Midkiff ("Midkiff"), purchased a ladder from the Defendant, Lowe's Home Centers, Inc. ("Lowes"), in Danville, Virginia. Werner Corporation ("Werner") manufactured the ladder. In December of 2004, Midkiff fractured her ankle when the ladder collapsed while in use. As a result of the accident, she has a permanent impairment.

On March 13, 2006, Midkiff notified Werner and Lowes of the injury and her claims for breach of warranty, pursuant to the Uniform Commercial Code. VA. CODE ANN. § 8.1-1, *et seq.* (2006). Lowes ignored the notice, but Werner responded and requested more information about the claim, which Midkiff sent on May 4, 2006. After this, Werner sent Midkiff a Notice of Bankruptcy on October 10, 2006.

Werner had filed a petition of bankruptcy in the United States Bankruptcy Court of the District of Delaware on June 12, 2006. Pursuant to a contract with Lowes, Werner had

1

previously agreed to indemnify Lowes for any and all claims that arose from the use of its products. On October 17, 2006, the Bankruptcy Court entered an order "staying, prohibiting and enjoining various Claimants from commencing or pursuing product liability, personal injury or similar actions in any court or other forum against [Werner] and/or any parties in the chain of distribution of [Werner's] products, including [Werner's] current customers and their affiliates." Because Lowes is in the chain of distribution for Werner's products and is a present customer of Werner's, Lowes is considered a Protected Defendant under the order and may not be sued for injury arising from Werner's products. The Order states that "[t]hose Claimants . . . who assert liability against a Protected Defendant shall be subject to the ADR [Alternative Dispute Resolution] procedures and shall be deemed 'ADR Claimants.' " Under the order, when Werner learns of a potential ADR claimant, Werner must serve that person with an ADR Package, which contains copies of the Court's Order, the ADR term sheet, a form of notice, and an opt out stipulation. The ADR Package describes the ADR procedures under which a claimant may seek recovery. Under that package the claimant has forty-five days from the date of service to file an ADR claim or twenty days to object to the ADR procedure. If the ADR Claimant does not respond within forty-five days, the claim is released against the Protected Defendant.

On January 24, 2007, Werner sent the ADR package to Midkiff. Midkiff asserts that the bar date in bankruptcy had expired almost two months earlier and that the service date on the order was off by several months. Lowes concedes that the ADR package contained an error regarding the service dates. Thus, Werner sent Midkiff a letter on February 22, 2007, explaining the error and giving Midkiff an extension of time to file her claim. Moreover, Werner ultimately served a new ADR Package on Midkiff on March 1, 2007. Midkiff has not complied with any of

these packages.

## II. PROCEDURAL BACKGROUND

Midkiff initially filed suit in the Circuit Court for the City of Danville. Lowes filed a similar motion to stay in that court. The state judge, the Honorable David Melesco, stated that he felt compelled to grant the order. At that time, Midkiff non suited her case.

Midkiff filed the present case on April 9, 2007. Lowes filed a motion for summary judgment or, in the alternative, to stay proceedings, on April 26, 2007. Midkiff filed a brief in opposition on May 31, 2007. On June 7, 2007, Lowes filed a response. I heard oral arguments on the motions on July 13, 2007.

## III. LEGAL STANDARD

Summary judgment is appropriate when no genuine issue exists as to any material fact and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c). A genuine issue of a material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247- 248 (1986). In making this determination, "the court is required to view the facts and draw reasonable inferences in a light most favorable to the nonmoving party." *Shaw v. Stroud*, 13 F.3d 791, 798 (4th Cir. 1994) (citations omitted); *Felty v. Graves-Humphreys Co.*, 818 F.2d 1126, 1129 (4th Cir. 1987). Nevertheless, where the record taken as a whole cannot lead a rational trier of fact to find for the nonmoving party, no genuine issue exists for trial and summary judgment is appropriate; that is, the moving party is entitled to judgment as a matter of law. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Additionally, "the mere existence of a scintilla of evidence in support of the plaintiff's position

3

will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252.

## IV. DISCUSSION

I have decided to grant a stay on the proceedings in this case until the underlying bankruptcy proceedings are resolved. The Title 11 bankruptcy code provides for an automatic stay for on judicial proceedings which could have been commenced prior to the debtor's filing for bankruptcy. 11 USCS § 362(a)(1); *Bd. of Supervisors v. Royal* (*In re Royal*), 137 Fed. Appx. 537, 539 (4th Cir. 2005). The stay prohibits "any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate." 11 U.S.C. § 362(a)(3). The stay applies to suits both against the debtor or third parties which could affect the property in the bankruptcy estate. *A.H. Robins Co. v. Piccinin*, 788 F.2d 994, 1001 (4th Cir. 1986). The purpose of the automatic stay is to protect debtors and their estates and to "allow for a systematic, equitable liquidation proceeding by avoiding a 'chaotic and uncontrolled scramble for the debtor's assets in a variety of uncoordinated proceedings in different courts.' *Safety-Kleen, Inc. v. Wyche*, 274 F.3d 846, 864 (4th Cir. 2001) (quoting *Fidelity Mortgage Investors v. Camelia Builders, Inc.* (*In re Fidelity Mortgage Investors*), 550 F.2d 47, 55 (2d Cir. 1976)). Thus, "the stay insures that the debtor's affairs will be centralized, initially, in a single forum in order to prevent conflicting judgments from different courts and in order to harmonize all of the creditors' interests with one another." *Fidelity Mortgage*, 550 F.2d at 55.

The automatic stay applies to Midkiff because her claim is directed at a third party which will ultimately be indemnified by the debtor. Her claim stands to potentially diminish the products liability policy of the debtor, and such policies have been held to be protected by the

4

automatic stay of § 362. *A.H. Robins*, 788 F.2d at 1001-1002. Section 362 allows a party to petition for relief from the stay for cause. 11 USCS § 362(d). The burden of proof is on the party opposing the stay on all issues except for the issue of a debtor's equity in property. 11 USCS § 362(g). Although the term "cause" is not defined in § 362(d), courts have held that relief for the stay may be granted in a number of situations. *See*, ALAN N. RESNICK, COLLIER ON BANKRUPTCY § 362.07(3)(a) (15th ed. 2007). For example, a party is entitled to relief from the stay where the debtor used bad faith or where a party must win a judgment against the bankrupt in order to collect insurance. *In re Laguna Assocs. Ltd. Partnership*, 30 F.3d 734, 31 C.B.C.2d 545 (6th Cir. 1994) (bad faith); *IBM v. Fernstrom Storage & Van Co.* (*In re Fernstrom Storage & Van Co.*), 938 F.2d 731 (7th Cir. 1991) (stay lifted in order to obtain recovery from bankrupt's insurer).

Midkiff has raised several arguments in support of relief from the stay, but none show cause. Midkiff contends that the Fourth Circuit's decision in *A. H. Robins* is inapplicable to this case for a number of reasons. First, Midkiff claims that there are insufficient injury claims for Werner's insurance policy to be threatened as opposed to A.H. Robins which established a two billion dollar trust fund in the face of over 200,000 claimants related to A.H. Robins's Dalkon Shield. *A.H. Robins Co.*, 880 F.2d 694, 700 (4th Cir. 1989). Second, in *A.H. Robins* claim amounts could be established by trial, arbitration, or other ADR procedure, whereas in the current case claimants are forced into arbitration in Delaware. *In re A. H. Robins Co.*, 112 F.3d 160, 162 (4th Cir. 1997). Third, the *A.H. Robins* court did not prohibit suits against third parties based on independent claims, such as malpractice, but allowed those suits to proceed even though defendant physicians would likely have a claim for indemnity against A.H. Robins. *A. H.*

5

*Robins Co.*, 880 F.2d at 701. Fourth, unlike *A.H. Robins*, Werner's assets will be sold and there is no reorganization plan for the court to protect. Midkiff argues that because Werner has had the chance to reorganize, this liability claim can no longer hurt the estate. Additionally, unlike *A.H. Robins*, Werner has been given permission by the Bankruptcy Court to settle injury claims out of its own funds or its insurer's funds.

Midkiff's arguments distinguishing *A.H. Robins* on factual differences are irrelevant because I only refer to that case for the general principles of law it announced. Indeed, other courts have similarly held that bankruptcy courts should oversee the allocation of insurance policy distributions when there is a danger that the claims may diminish the estate and for the purposes of judicial economy. *Johns-Manville Corp. v. Asbestos Litig. Group (In re Johns-Manville Corp*.), 26 B.R. 420, 436-37 (Bankr. D.N.Y. 1983) (*rev'd in part on other grounds*, 41 B.R. 926 (S.D.N.Y. 1984). Her analogy to malpractice claims which were allowed to proceed in *A.H. Robins* despite the possibility of indemnity is also irrelevant because the contract for indemnity here makes it a certainty that her claim will be paid from Werner's estate. Providing relief from the stay in Midkiff's case could allow other claimants to do an end run around bankruptcy proceedings and could lead to the "chaotic and uncontrolled scramble for the debtor's assets in a variety of uncoordinated proceedings in different courts" which Section 362 was designed to avoid. *Fidelity Mortgage*, 550 F.2d at 55.

Finally, Midkiff argues that her contract with Lowes should be enforced out of basic fairness. The ladder she purchased from Lowes was defective. She was not a party to Lowes' and Werner's indemnity contract. Under Virginia's joint and several liability scheme, she could have sued either Lowes, Werner, or both. *Murray v. Smithson*, 187 Va. 759, 764, 48 S.E.2d 239,

6

241 (1948). Had Werner not filed for bankruptcy, Midkiff could recovered from Lowes without reference to Werner. Thus, she should be able to take the benefit of her bargain and let Lowes take the benefit of its bargain with Werner. She suggests that if anyone should bear a loss in this case, it should be Lowes, the entity that actually bargained with the debtor. Moreover, she claims that she did not have adequate notice of the bankruptcy proceedings.

Again, this argument is inapposite. While it is true that she could recover from Lowes but for Werner's bankruptcy, Werner did file for bankruptcy, and any recovery that Midkiff may receive will ultimately diminish the bankruptcy estate. The fact that Midkiff would have had an independent claim against Lowes otherwise is not material to this case. The issue of notice is also unpersuasive. While Lowes admits that the service of the process for arbitration was misleading, they also attempted to cure this mistake and did provide Midkiff with an opportunity to file an arbitration claim. Furthermore, Midkiff had been notified that bankruptcy proceedings were pending two months prior to the bar date. In sum, Midkiff has presented no cause for which the automatic stay should be lifted.

### V.    CONCLUSION

For the reasons stated above, the Defendant's Motion to Stay Proceedings is **GRANTED**. Proceedings on this case are **STAYED** pending the outcome of the proceedings in the United States Bankruptcy Court of the District of Delaware. The Clerk is directed to send a certified copy of this Memorandum Opinion and the attached Order to all counsel of record.

ENTERED this 30th day of July, 2007.

s/Jackson L. Kiser
Senior United States District Judge

7